|  |  |  |
|---|---|---|
| **DENNIS HONHOLT**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number_____ |
| | ) | |
| **TOWN OF DOVER, TENNESSEE**, a municipal | ) | |
| corporation; **CHARLES PARKS, SR.**, in his | ) | |
| individual and official capacity; **LESA FITZHUGH**, | ) | **JURY DEMAND** |
| in her individual and official capacity; and **OLIVIA** | ) | |
| **WANN**, in her individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

Plaintiff Dennis Honholt, by and through undersigned counsel, respectfully alleges as follows:

### NATURE OF THE ACTION

1. This civil rights action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. Plaintiff Dennis Honholt served as Police Chief for the Town of Dover, Tennessee, for more than five years. During his tenure, he uncovered suspected public corruption involving misuse of public funds, conflicts of interest, official misconduct, and violations of federal and state regulations. When Plaintiff reported suspected corruption and safety violations to state and federal authorities in or around September 2024, he became the target of a systematic campaign of retaliation culminating in his constructive discharge on May 9, 2025.

1

2. Defendants violated Plaintiff's clearly established constitutional rights by terminating his employment in retaliation for engaging in protected speech and petitioning government authorities regarding matters of profound public concern, and by depriving him of constitutionally required pre-termination process despite his legitimate claim of entitlement to continued employment.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

4. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Stewart County, Tennessee, which is located within this judicial district, and because all Defendants reside in this district.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims as to form part of the same case or controversy. To the extent any Defendant contends that any Tennessee Governmental Tort Liability Act issue affects any state-law tort claim against the Town, Plaintiff pleads his federal claims independently and in the alternative requests that any such state-law municipal tort claim be dismissed without prejudice rather than affecting the Court's jurisdiction over the federal counts.

## PARTIES

6. Plaintiff Dennis Honholt is a citizen and resident of Montgomery County, Tennessee, and has resided in Tennessee for over fifteen years. At all times relevant to this Complaint, Plaintiff was employed by Defendant Town of Dover as its Police Chief.

7. Plaintiff was a full-time salaried non-exempt employee of the Town of Dover.

8. Defendant Town of Dover ("Dover" or "the Town") is a municipal corporation organized and existing under the laws of the State of Tennessee, located in Stewart County, Tennessee. Dover is a "person" subject to suit under 42 U.S.C. § 1983. Dover may be served through its City Manager at 625 Donelson Parkway, P.O. Box 447, Dover, Tennessee 37058.

9. Defendant Charles Parks, Sr. ("Parks") is sued in his individual and official capacity. At all times relevant to this Complaint, Parks served as City Manager for the Town of Dover and was responsible for hiring, supervising, and terminating Town employees, including Plaintiff. Parks acted under color of state law in his capacity as City Manager. Parks may be served at 625 Donelson Parkway, P.O. Box 447, Dover, Tennessee 37058.

10. Defendant Lesa Fitzhugh ("Fitzhugh") is sued in her individual and official capacity. At all times relevant to this Complaint, Fitzhugh served as Mayor of the Town of Dover. Fitzhugh acted under color of state law in her capacity as Mayor. Fitzhugh may be served at 625 Donelson Parkway, P.O. Box 447, Dover, Tennessee 37058.

11. Defendant Olivia Wann ("Wann") is sued in her individual and official capacity. At all times relevant to this Complaint, Wann served as City Attorney for the Town of Dover and participated directly in the decisions and actions that resulted in Plaintiff's termination. Wann acted under color of state law in her capacity as City Attorney. Wann may be served at her business address or through the Town at 625 Donelson Parkway, P.O. Box 447, Dover, Tennessee 37058.

## JURY DEMAND

12. Plaintiff hereby demands a trial by jury on all issues so triable.

3

## FACTUAL ALLEGATIONS

### A. Plaintiff's Exemplary Service as Police Chief

13. On or about March 1, 2020, Plaintiff was hired as Police Chief for the Town of Dover by then-City Manager Gerald Campbell.

14. During hiring negotiations, Plaintiff and Campbell specifically discussed and agreed that Plaintiff would receive "property rights" in his position and would not be terminated or "unappointed" without just cause and appropriate procedural protections. Campbell acknowledged the importance of this protection to induce Plaintiff to relocate his family to Dover and accept the position.

15. Plaintiff has more than thirty years of law enforcement experience and maintains a nearly unblemished employment record. Throughout his tenure with Dover, Plaintiff received no formal discipline and consistently received positive feedback from supervisors and colleagues, though the Town failed to provide written performance evaluations.

16. Under Plaintiff's leadership, the Dover Police Department achieved substnatial improvements in professionalism, training, community relations, and operational effectiveness. Plaintiff was respected by his officers and the community he served.

### B. Discovery of Public Corruption

17. Beginning in 2023 and continuing through 2024, Plaintiff became aware of serious suspected criminal conduct, ethical violations, and corruption involving Dover city officials, Stewart County officials, and their associates.

18. Plaintiff investigated and gathered evidence concerning, among other matters: (a) an alleged "931 Group" development scheme involving elected and appointed officials using public

power for private development gain; (b) alleged misuse of on-the-clock Dover employees on private properties associated with Parks and others; (c) workplace safety violations implicating TOSHA and OSHA requirements; (d) alleged retaliation, discrimination, and official misconduct affecting citizens and former Dover officers; and (e) additional suspected misconduct involving local public institutions and law-enforcement personnel.

19. These matters involved suspected violations of criminal law, ethics rules, workplace-safety regulations, and constitutional rights affecting the citizens of Dover and Stewart County.

### C. Protected Reports to Government Authorities

19. In or around September 2024, after conducting investigations and gathering substantial documentation, Plaintiff provided documentation concerning the foregoing suspected misconduct to outside agencies, including the Tennessee Bureau of Investigation, the District Attorney's Office, the Tennessee State Comptroller/Auditor, TOSHA, and OSHA.

20. Plaintiff's reports to these agencies constituted speech and petitioning activity on matters of profound public concern, including corruption, misuse of public resources, criminal conduct, and safety violations by public officials.

21. Plaintiff made these reports as a citizen rather than pursuant to any ordinary duty to report his own municipal superiors and city leadership to outside state and federal agencies. Reporting suspected wrongdoing by his own supervisors and city leadership to external authorities was an act of civic duty undertaken at substantial personal risk.

5

22. Plaintiff's reports addressed matters that directly affected the health, safety, and financial well-being of Dover's citizens, including misappropriation of public funds, threats to child safety, violations of civil rights, and unsafe working conditions.

23. On May 9, 2025, during termination proceedings, Plaintiff expressly invoked whistleblower protections and asserted that he had reported illegal activity to outside authorities and was protected from retaliation.

**D. Threats and warnings from Parks**

24. On multiple occasions prior to Plaintiff's termination, City Manager Parks warned Plaintiff that if plaintiff "keeps digging," they would "come after" him and, if they could not get Plaintiff, they would come after your family.

25. These warnings were intended to discourage Plaintiff from continuing his investigations and from reporting wrongdoing to outside authorities.

26. Despite the fact Plaintiff perceived these statements as threats, Plaintiff continued his investigations and made his reports because he believed it was his duty to expose corruption and protect the public.

**E. Approved Leave of Absence Becomes Basis for Termination**

27. In February 2025, Plaintiff informed City Manager Parks that he needed to address family health matters in Michigan and had received a job offer from a Michigan law enforcement agency. Plaintiff offered his resignation out of transparency and caution.

6

28.     Parks expressly declined to accept Plaintiff's resignation, stating "I don't need that," and directed Plaintiff to submit a leave request instead. Parks further told Plaintiff not to mention the Michigan job in the written request.

29.     On March 8, 2025, Plaintiff submitted a written request for leave of absence from March 31 through May 30, 2025, to address family matters. The request was approved by Parks.

30.     Plaintiff remained in close contact with Parks and the Dover Police Department during the leave period, remained available by phone and email, and continued to provide direction as needed.

31.     On April 21, 2025, after a short time in Michigan, Plaintiff resigned from the Michigan position due to workplace issues unrelated to Dover. Plaintiff returned to Dover and resumed full-time work on April 25, 2025, before his approved leave period expired.

## F.  Text messages showing trust and cooperation post-Michigan

32.     On April 23, 2025, Parks sent Plaintiff a text message requesting that Plaintiff attend a civic meeting on behalf of the mayor. Plaintiff promptly agreed to attend. Later that same day, Parks sent another message stating, "Mayor wants to see you," and Plaintiff responded, "Be there in five." These exchanges show that Parks and Fitzhugh continued to rely upon Plaintiff in his official capacity.

33.     On April 28, 2025, at 6:56 p.m., Parks sent Plaintiff a text asking whether Plaintiff had Kentucky documentation relating to a firearm-retrieval matter and whether Plaintiff had any conclusion to that investigation. Plaintiff responded, "I do. I have an entire binder and turned it all over to the TBI and DA." Parks replied, "Okay thanks," and Plaintiff answered, "No problem."

The professional and cooperative tone of this exchange is inconsistent with any contemporaneous belief that Plaintiff was dishonest, insubordinate, or untrustworthy.

34. Also on April 28, 2025, Parks sent Plaintiff a link to a media article about the South Haven, Michigan position and wrote, "We have more calls from Michigan." Plaintiff responded that he was not surprised and had not responded, and explained that in his experience a public statement would likely have little effect. This exchange further demonstrates Plaintiff's transparency and willingness to cooperate with Parks in addressing outside inquiries.

35. Parks also asked Plaintiff for contact information for a city administrator in Michigan, and Plaintiff responded cooperatively that he would send it. These messages further undermine any later claim that Parks had already lost trust in Plaintiff before the May 9 meeting.

### G. Pretextual Termination Campaign

36. Between April 30 and May 9, 2025, Parks and City Attorney Wann subjected Plaintiff to five separate meetings over seven days, during which they repeatedly attempted to end Plaintiff's employment but failed to articulate a stable, legitimate basis for doing so.

37. During the initial meeting Parks and Wann cited media inquiries concerning the Michigan position. Plaintiff reminded them that he had disclosed the situation to Parks, had offered to resign, and that Parks had declined the resignation and approved leave instead. The meeting ended without resolution.

38. During later May 5 meetings, Parks claimed that a Michigan city manager had said Plaintiff lied to obtain the Michigan job. Plaintiff offered evidence that the Michigan official had made false statements.

39. At the conclusion of the May 5 discussions, Parks and Wann agreed in substance that Plaintiff would retain his Dover position if he could obtain clarification from Michigan officials correcting the public story.

40. On May 8, 2025, Parks held a meeting with Plaintiff's subordinate officers outside Plaintiff's presence. Officers later indicated to Plaintiff that Parks appeared to be trying to gather support for Plaintiff's removal.

41. On the morning of May 9, 2025, Parks sent Plaintiff a text message at 8:06 AM stating, "Dennis I need to meet with you this morning at 9 am." Plaintiff confirmed he would attend.

**H. May 9 recordings and deliberate denial of process**

42. During the May 9 meetings, Parks and Wann demanded Plaintiff's resignation or threatened termination. Plaintiff specifically asked Wann whether he was receiving a *Loudermill* hearing, that is, the pre-termination process required if an employee has a protected property interest in continued employment.

43. Wann requested time to research the issue and, upon reconvening, stated that she had looked at the Town handbook and researched the matter. Wann told Plaintiff, in substance, that *Loudermill* protections would apply only if incorporated into Town procedures and that such protections did not apply to Dover.

44. Wann then instructed Plaintiff that, if he was going to resign, he should provide only a brief written statement. When Plaintiff responded, "Well, choosing, I didn't even have an option," Wann answered, "Well, you do have an option. It's not to resign and he's going to dismiss

9

you. So either way, you are effectively - your employment is terminated whether it's involuntarily or voluntarily."

45. Wann further stated that whatever Plaintiff wrote, if he resigned, would remain in his personnel record and be subject to public disclosure.

46. Plaintiff's resignation was coerced and constituted a constructive discharge. He was given a false choice: resign immediately or be fired immediately. No meaningful third option existed. When Plaintiff asked what "just cause" supported termination, he was told in substance that he could "look for another job."

47. When Plaintiff explained that this did not constitute just cause, Parks stated, "We don't trust you."

48. During the May 9 meetings, Plaintiff repeatedly asserted his claimed property rights in continued employment, explained the basis for those rights, and demanded pre-termination process.

49. Defendants' rejection of Plaintiff's request for pre-termination process, after researching the issue and deciding not to provide such process, was deliberate rather than accidental.

50. At no time during the meetings did Defendants provide Plaintiff with written notice of specific charges, a coherent explanation of evidence, a meaningful opportunity to present witnesses or documentary proof, or a neutral pre-termination process.

51. Parks and Wann's shifting explanations are evidence of pretext.

52. Under duress and facing certain immediate termination without meaningful process, Plaintiff submitted a resignation on May 9, 2025. That resignation was not voluntary.

10

## I. Post-Termination Retaliation

53. After Plaintiff's forced resignation, Defendants engaged in a continuing pattern of retaliatory conduct intended to punish Plaintiff, damage his reputation, and interfere with his future employment.

54. The Town refused to pay Plaintiff for 530 hours of accrued holiday compensatory time that Plaintiff was owed under Town policy and past practice.

   a. Dover maintained a policy under which officers who worked on designated holidays accrued reciprocal 'compensatory' time off in lieu of overtime pay.

   b. At the time of his separation, Plaintiff had accrued approximately 530 hours of such compensatory time, and Dover has refused to compensate Plaintiff for this accrued time despite his separation from employment.

55. The Town failed to provide COBRA continuation coverage information within the expected period following Plaintiff's separation.

56. Plaintiff experienced repeated unauthorized access attempts involving his Facebook account, followed by the account's permanent shutdown, which Plaintiff believes was part of a campaign of harassment connected to his separation and protected activity.

57. On June 22, 2025, Fitzhugh sent Plaintiff a text message asking how he would feel if people found out why he resigned. Plaintiff understood this as a threat to spread false and harmful information about him.

58. Plaintiff also learned that officers claimed a file involving one of Plaintiff's potential public corruption investigations went missing after his departure, and that the only camera that would have captured activity in the relevant area was, unusually, not functioning. Plaintiff later sent a preservation demand concerning those recordings and related evidence.

11

59. Between June and August 2025, Plaintiff applied for law-enforcement positions and was repeatedly denied employment after prospective employers contacted Dover. A July 22, 2025 Robertson County Sheriff's Office rejection letter referenced "Employer discharge" as part of the background rationale. Plaintiff maintains he was not legitimately discharged for cause and that Defendants provided false or misleading information to interfere with his future employment.

60. A potential buyer of Plaintiff's home was provided false or misleading information regarding property restrictions by Town officials that prevented the timely sale of Plaintiff's home.

### J. Municipal Liability

61. The unconstitutional acts described above were carried out by senior Town officials with final or substantial policymaking authority in personnel matters and in response to Plaintiff's external reports of suspected wrongdoing.

62. Parks, as City Manager, exercised final authority over Plaintiff's employment status and directly orchestrated the May 2025 campaign to force Plaintiff from office.

63. Fitzhugh participated in the events leading to Plaintiff's removal and in post-termination retaliation.

64. Wann participated directly in the May 9 process, researched and rejected Plaintiff's request for pre-termination protections, and helped implement the decision to end Plaintiff's employment immediately.

65. The actions taken against Plaintiff were therefore undertaken pursuant to official decision-making by Town leadership and were not isolated acts of a low-level employee.

12

**K. Damages**

66. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment, loss of wages and benefits, damage to professional reputation, diminished future earning capacity, emotional distress, and other consequential losses.

**COUNT I**
**42 U.S.C. § 1983 – First Amendment Retaliation (Speech Clause)**
**(Against All Defendants)**

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Plaintiff engaged in speech protected by the First Amendment when he reported suspected corruption, misuse of public resources, criminal conduct, and safety violations to outside agencies including the TBI, District Attorney, Comptroller/Auditor, TOSHA, and OSHA.

69. Plaintiff's speech addressed matters of public concern.

70. Plaintiff spoke as a citizen, not merely pursuant to ordinary job duties, when he reported suspected wrongdoing by his own municipal superiors and city leadership to outside authorities.

71. Defendants knew of Plaintiff's protected speech, as shown by Parks' warnings about Plaintiff "digging" and by Plaintiff's express invocation of whistleblower protection during the May 9 proceedings.

72. Defendants subjected Plaintiff to adverse actions including constructive discharge and post-employment retaliation.

73. Plaintiff's protected speech was a substantial or motivating factor in Defendants' conduct.

13

74. As a direct and proximate result, Plaintiff suffered the damages described above.

## COUNT II
### 42 U.S.C. § 1983 – First Amendment Retaliation (Petition Clause)
### (Against All Defendants)

75. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76. Plaintiff exercised his First Amendment right to petition the government for redress of grievances by formally reporting suspected illegal activity and corruption to outside governmental authorities.

77. Defendants retaliated against Plaintiff for exercising that right.

78. As a direct and proximate result, Plaintiff suffered the damages described above.

## COUNT III
### 42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process
### (Against All Defendants)

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80. Plaintiff had a legitimate claim of entitlement to continued employment as Police Chief.

81. That claim of entitlement arose from: (a) the express agreement between Plaintiff and then-City Manager Campbell that Plaintiff would not be terminated or "unappointed" absent just cause and appropriate procedural protections; and (b) Dover's policies and established practices requiring just cause and progressive discipline before separating long-serving department heads.

14

82. If Plaintiff possessed that property interest, the Fourteenth Amendment required notice of the charges, an explanation of the employer's evidence, and an opportunity to respond before termination.

83. Plaintiff expressly requested that process on May 9, 2025.

84. Defendants denied Plaintiff such process and instead forced him to choose between immediate resignation and immediate dismissal.

85. The serial meetings conducted between April 30 and May 9, 2025 did not provide constitutionally adequate pre-termination process because the stated reasons shifted, no specific written charges were given, no meaningful hearing occurred, and the outcome had already been decided.

86. Defendants thereby deprived Plaintiff of his property interest, if found, without due process of law.

87. As a direct and proximate result, Plaintiff suffered the damages described above.

## COUNT IV
### 42 U.S.C. § 1983 – Municipal Liability (*Monell*)
### (Against Town of Dover)

88. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89. The constitutional violations alleged above were committed pursuant to official decision-making by Town leadership, including Parks and Wann in the termination process and Fitzhugh in related retaliatory conduct.

90. Parks acted as a final policymaker with respect to Plaintiff's employment separation.

15

91. The Town, through its officials, deliberately chose to deny Plaintiff pre-termination process after researching and rejecting his request for it.

92. The Town is liable for the constitutional violations inflicted on Plaintiff as a direct result of those official decisions.

## COUNT V
### Tennessee Public Protection Act (Tenn. Code Ann. § 50-1-304)
### (Against Town of Dover)

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. The Tennessee Public Protection Act prohibits an employer from discharging or retaliating against an employee solely for refusing to participate in, refusing to remain silent about, or reporting illegal activities.

95. Plaintiff refused to remain silent about and reported suspected illegal activities, including corruption, misuse of public resources, and safety violations, to appropriate outside authorities.

96. Plaintiff's protected conduct was a substantial and motivating factor in the decision to force him from employment.

97. The Town's conduct violated the Tennessee Public Protection Act.

98. As a direct and proximate result, Plaintiff suffered the damages described above.

## COUNT VI
### Common Law Retaliatory Discharge (Public Policy)
### (Against Town of Dover)

99. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

16

100. Tennessee statutes, constitutional provisions, and case law reflect a clear and substantial public policy that: (a) employees must not be required to participate in or remain silent about illegal activities; (b) employees may report violations of law to appropriate authorities; (c) citizens have a constitutional right to petition the government for redress of grievances; (d) public employees who possess a legally recognized property interest in their jobs are entitled to due process before termination; and (e) whistleblowers who expose organizational wrongdoing and illegal activities are protected from retaliation.

101. Plaintiff's reports of suspected corruption, misuse of public resources, and safety violations furthered those public policies.

102. The Town constructively discharged Plaintiff in retaliation for conduct protected by those public policies.

103. As a direct and proximate result, Plaintiff suffered the damages described above.

### COUNT VII
**Fair Labor Standards Act - Unlawful Withholding of Wages (29 U.S.C. § 201, *et seq.*)**
**(Against Town of Dover)**

104. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

105. Plaintiff is entitled to compensation under the Fair Labor Standards Act ("FLSA") for all hours worked, including compensatory time accrued for work performed on federal holidays.

106. Dover's policy and past practice entitled Plaintiff to accrue compensatory time off in lieu of overtime pay for hours worked on holidays, consistent with 29 U.S.C. § 207(o).

107. At the time of his separation, Plaintiff had accrued 530 hours of compensatory time for work performed on holidays between May 2020 and February 2025.

17

108.    Upon separation from employment, Dover was required by the FLSA to pay Plaintiff for all accrued compensatory time at his regular rate or at the overtime rate, as applicable under 29 U.S.C. § 207(o)(3).

109.    Dover willfully refused to pay Plaintiff for his 530 hours of accrued compensatory time.

110.    Dover's refusal to pay was in retaliation for Plaintiff's reports of corruption and violations of law and intended to inflict financial harm on Plaintiff.

111.    Dover's willful violation of the FLSA entitles Plaintiff to:

- Payment of all unpaid wages for 530 hours;

- Liquidated damages in an equal amount pursuant to 29 U.S.C. § 216(b);

- Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b);

- Such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dennis Honholt respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Declare that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

B. Award Plaintiff compensatory damages in an amount to be determined at trial, including: (i) Lost wages and benefits from the date of termination through trial and beyond; (ii) Lost pension benefits calculated over Plaintiff's expected remaining working life; (iii) Unpaid wages for 530 hours of accrued compensatory time; (iv)

Damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life; (v) Damages for injury to professional reputation and career prospects;

C.  Award Plaintiff liquidated damages pursuant to 29 U.S.C. § 216(b) for Dover's willful violation of the Fair Labor Standards Act;

D.  Award Plaintiff punitive damages against Defendants Parks, Fitzhugh, and Wann in their individual capacities for their willful, wanton, and malicious violations of Plaintiff's constitutional and statutory rights;

E.  Award Plaintiff front pay in lieu of reinstatement, recognizing that the working relationship has been irreparably damaged;

F.  Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 29 U.S.C. § 216(b);

G.  Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

H.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Seamus Kelly*
Seamus T. Kelly (TN BPR# 032202)
David J. Goldman (TN BPR# 035151)
Deji Adeniyi (TN BPR# 042551)
**MUSIC CITY LAW, PLLC**
1033 Demonbreun Street, Suite 300
Nashville, TN 37203
(615) 200-0682
seamus@musiccityfirm.com
david@musiccityfirm.com
deji@musiccityfirm.com

*Attorneys for Dennis Honholt*

19